IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ARVEST BANK, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PRESTON E. BYRD, DONETTE L. | ) | |
| BYRD, and PRESTON E. BYRD | ) | |
| IRREVOCABLE INSURANCE TRUST, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |
| and | ) | Nos. 10-2004, 10-2007 |
| | ) | |
| ARVEST BANK, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ORSON T. SYKES, JAMES D. | ) | |
| HUTTON, and HORIZON HOLDING | ) | |
| COMPANY, LLC, | ) | |
| | ) | |
|     Defendants. | ) | |

ORDER GRANTING PLAINTIFF ARVEST BANK'S
MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT ORSON T. SYKES ON
CLAIMS FOR BREACH OF GUARANTY AND SURETYSHIP AGREEMENT AND
GUARANTY OF COMPLETION AGREEMENT

Before the Court is the August 26, 2010 Motion for Summary Judgment Against Defendant Orson T. Sykes on Claims for Breach of Guaranty and Suretyship Agreement and Guaranty of Completion Agreement ("Motion") filed by Plaintiff Arvest Bank ("Arvest"). (Pl. Arvest Bank's Mot. for Summ. J. Against Def. Orson T. Sykes

on Claims for Breach of Guaranty and Suretyship Agreement and Guaranty of Completion Agreement, ECF No. 31.)[1]   Defendant Orson T. Sykes ("Sykes") responded in opposition on December 31, 2010. (Def. Orson T. Sykes' Resp. in Opp'n to Arvest Bank's Mot. for Summ. J., ECF No. 47 ("Def.'s Resp.").)   Arvest replied on January 13, 2011.  (Pl. Arvest Bank's Reply Mem., ECF No. 53 ("Pl.'s Reply").)   Sykes filed a response in opposition to Arvest's Reply on February 14, 2011.  (Def. Orson T. Sykes' Resp. in Opp'n to Arvest Bank's Reply, ECF No. 60 ("Def.'s Reply").)   For the following reasons, Arvest's Motion is GRANTED.

## I.    Factual Background[2]

Defendant Horizon Holding Company, LLC ("Horizon Holding") was a Tennessee limited liability company doing business in Shelby County, Tennessee.  (See Pl. Arvest Bank's Separate Statement of Material Facts ¶ 1, ECF No. 31-2 ("Pl.'s Statement of Facts"); Def. Orson T. Sykes' Resp. to Arvest Bank's Separate Statement of Material Facts ¶ 1, ECF No. 48 ("Def.'s Resp. to Pl.'s Statement of Facts").)   Before Horizon Holding was administratively dissolved on August 8, 2010, Sykes was a member

---

[1] Arvest filed the Motion in Arvest Bank v. Sykes, No. 10-2007, after an order was entered transferring and consolidating that case with Arvest Bank v. Byrd, No. 10-2004.  (Order Granting Mot. to Transfer and Consolidate 1-2, ECF No. 30.)  All responses and replies to the Motion appear in Arvest Bank v. Sykes, No. 10-2007.  For ease of reference, the ECF numbers referenced in this Order refer to the ECF numbers in Arvest Bank v. Sykes, No. 10-2007.
[2] Unless otherwise stated, all facts discussed in this Part are undisputed for purposes of Arvest's Motion.

of Horizon Holding. (See Pl.'s Statement of Facts ¶¶ 1-2; Def.'s Resp. to Pl.'s Statement of Facts ¶¶ 1-2.)

In 2006 and 2007, Horizon Holding sought financing for the acquisition and construction of a multifamily low-and moderate-income housing facility to be known as the Lamar Crossing Apartments project in Memphis, Tennessee ("Project"). (See Pl.'s Statement of Facts ¶ 3; Def.'s Resp. to Pl.'s Statement of Facts ¶ 3.) Horizon Holding was to be the general partner of the lessee Lamar Crossing Apartments, L.P. ("Lessee").[3] (See Pl.'s Statement of Facts ¶ 3; Def.'s Resp. to Pl.'s Statement of Facts ¶ 3.)

The Project transaction required the issuance of $8,100,000 in Multifamily Housing Revenue Bonds ("Bonds") by the Health, Educational, and Housing Facility Board of the City of Memphis, Tennessee. (See Pl.'s Statement of Facts ¶ 4; Def.'s Resp. to Pl.'s Statement of Facts ¶ 4.) The Bonds were issued to finance the renovation, construction, and improvement of the Project. (See Pl.'s Statement of Facts ¶ 4; Def.'s Resp. to Pl.'s Statement of Facts ¶ 4.) Arvest was the primary lender and purchaser of the Bonds, investing $8,219,576.81 in the Project.

---

[3] Sykes denies this fact and cites his answer to Arvest's Amended Complaint as his basis for denying it. (See Def.'s Resp. to Pl.'s Statement of Facts ¶ 3.) Because Arvest supports this fact by citing to an affidavit, Sykes cannot demonstrate that this fact is in dispute by citing to the pleadings. See Rose v. Truck Ctrs., Inc., 388 F. App'x 528, 531 (6th Cir. 2010); Mathis v. Bowater Inc., 985 F.2d 277, 278 (6th Cir. 1993). Therefore, Sykes has admitted this fact for purposes of Arvest's Motion.

(<u>See</u> Pl.'s Statement of Facts ¶ 5; Def.'s Resp. to Pl.'s Statement of Facts ¶ 5.)

In 2006, Sykes executed three limited, durable powers of attorney to Preston E. Byrd ("Byrd"). (<u>See</u> Pl.'s Statement of Facts ¶ 6; Def.'s Resp. to Pl.'s Statement of Facts ¶ 6.) When Sykes executed those documents, he was aware that Byrd had a prior felony conviction for wire fraud.[4] (<u>See</u> Pl.'s Statement of Facts ¶ 7; Def.'s Resp. to Pl.'s Statement of Facts ¶ 7.)

Sykes executed the first limited, durable power of attorney on March 16, 2006, which read:

> I, ORSON T. SYKES, do hereby grant unto PRESTON E. BYRD, a limited power of attorney to sign on my behalf any and all documents necessary to conduct the development and transactional business for Lamar Development, LLC, a Tennessee limited liability company and/or Lamar Crossing Apartments, LP, a Tennessee limited partnership, for said property located at:
>
> 2881 LAMAR AVENUE, MEMPHIS, TN 38115
>
> This power of attorney includes power to sign the contracts, addenda, settlement sheets and any addenda and certifications, warranty deed, deed of conveyance, owner's affidavit, or any other documents required by the lender or closing attorney.

---

[4] Arvest cites Sykes' admission that he became aware that Byrd had a criminal conviction in approximately 2005 in his answer to Arvest's Amended Complaint as support for this factual assertion. (<u>See</u> Pl.'s Statement of Facts ¶ 7; Answer of Orson Sykes to Am. Compl. ¶ 50, ECF No. 24 ("Answer").) Sykes responded by stating that he objects to that fact being offered in support of Arvest's Motion because that fact is irrelevant. (Def.'s Resp. to Pl.'s Statement of Facts ¶ 7.) Because Arvest supported this factual assertion by citing Sykes' admission, Sykes cannot demonstrate that it is in dispute by objecting based on relevancy. <u>See</u> <u>Rose</u>, 388 F. App'x at 531; <u>Mathis</u>, 985 F.2d at 278. Therefore, Sykes has admitted this fact for purposes of Arvest's Motion.

Pursuant to the Durable Power of Attorney Act of the
State of Tennessee, T.C.A. Sections 34-6-101 et seq.,
the rights, powers and authority of said attorney-in-
fact granted in this instrument shall commence and be
in full force and effect from the time of the signing
of this instrument, and shall not be affected or
revoked by my subsequent disability or incapacity.
Such rights, powers and authority shall remain in full
force and effect until I give notice in writing that
such power is terminated.   All rights, powers and
benefits of the said Durable Power of Attorney Act are
hereby incorporated herein by reference and are
adopted with the full intent that this power of
attorney shall be a durable power of attorney pursuant
to said act.

IN TESTIMONY WHEREOF, I have hereunto affixed my
signature this 16th day of March, 2006.

(Limited Power of Att'y 1, ECF No. 31-5.)   Below the quoted

language, Sykes signed the document and had his signature

notarized. (See id.)

Sykes executed the second limited, durable power of

attorney on March 17, 2006. (See id. at 2.)   It stated:

I, ORSON SYKES, do hereby grant unto PRESTON BYRD, a
limited power of attorney to sign on my behalf any and
all documents necessary to conduct the development and
transactional business for Horizon Holding Company,
LLC, a Tennessee limited liability company: [sic]

This power of attorney includes power to sign the
contracts, addenda, settlement sheets and any addenda
and certifications, warranty deed, deed of conveyance,
owner's affidavit, or any other documents required by
the lender or closing attorney or and [sic] business
related to the company.

Pursuant to the Durable Power of Attorney Act of the
State of Tennessee, T.C.A. Sections 34-6-101 et seq.,
the rights, powers and authority of said attorney-in-
fact granted in this instrument shall commence and be
in full force and effect from the time of the signing

5

> of this instrument, and shall not be affected or
> revoked by my subsequent disability or incapacity.
> Such rights, powers and authority shall remain in full
> force and effect until I give notice in writing that
> such power is terminated. All rights, powers and
> benefits of the said Durable Power of Attorney Act are
> hereby incorporated herein by reference and are
> adopted with the full intent that this power of
> attorney shall be a durable power of attorney pursuant
> to said act.
>
> IN TESTIMONY WHEREOF, I have hereunto affixed my
> signature this 17th day of March, 2006.

(Id.) Below the quoted language, Sykes signed the document and

had his signature notarized. (See id.)

Sykes executed the third limited, durable power of attorney

on August 30, 2006. (See id. at 3.) It stated:

> I, ORSON T. SYKES, do hereby grant unto PRESTON BYRD,
> a limited power of attorney to sign on my behalf any
> and all documents necessary to conduct the development
> and transactional business for Horizon Holding
> Company, LLC, a Tennessee limited liability company:
> [sic]
>
> This power of attorney includes power to sign the
> contracts, addenda, settlement sheets and any addenda
> and certifications, warranty deed, deed of conveyance,
> owner's affidavit, or any other documents required by
> the lender or closing attorney or and [sic] business
> related to the company.
>
> Pursuant to the Durable Power of Attorney Act of the
> State of Tennessee, T.C.A. Sections 34-6-101 et seq.,
> the rights, powers and authority of said attorney-in-
> fact granted in this instrument shall commence and be
> in full force and effect from the time of the signing
> of this instrument, and shall not be affected or
> revoked by my subsequent disability or incapacity.
> Such rights, powers and authority shall remain in full
> force and effect until I give notice in writing that
> such power is terminated. All rights, powers and
> benefits of the said Durable Power of Attorney Act are

> hereby incorporated herein by reference and are adopted with the full intent that this power of attorney shall be a durable power of attorney pursuant to said act.
>
> IN TESTIMONY WHEREOF, I have hereunto affixed my signature this 30th day of August, 2006.

(Id.) Below the quoted language, Sykes signed the document and had his signature notarized. (See id.)

Arvest argues that, as part of the Project transaction, Sykes entered into a Guaranty and Suretyship Agreement, personally guaranteeing the Lessee's debt and all amounts due or to become due under the lease documents, including all payments due in respect to the repayment of the Bonds' proceeds. (See Pl.'s Statement of Facts ¶ 11.) Arvest also argues that Sykes entered into a Guaranty of Completion Agreement, personally guaranteeing the full and complete construction of the property improvements, the payment of development costs, and the payment of any costs and expenses of the significant bondholder in enforcing the Lessee's obligation to complete construction of the property improvements. (See id. ¶ 12.) Attached to Arvest's Motion are copies of the Guaranty and Suretyship Agreement and Guaranty of Completion Agreement (collectively, "Guaranties") containing these promises and purporting to contain Sykes' signature. (See Ex. A, at 2-5, 9-12, ECF No. 31-9; Ex. B, at 2-5, 10-12, ECF No. 31-10.) Without personal guaranties from Sykes and Defendant James D. Hutton ("Hutton"),

another member of Horizon Holding, Arvest would not have
invested in the Project. (See Pl.'s Statement of Facts ¶ 13;
Def.'s Resp. to Pl.'s Statement of Facts ¶ 13; Am. Compl. ¶ 5,
ECF No. 19; Answer ¶ 5.)

Sykes opposes Arvest's argument by offering an affidavit in
which he testifies that he did not sign or guarantee the
obligations set forth in the Guaranties. (See Aff. of Orson T.
Sykes ¶¶ 8-9, 11-12, ECF No. 47-1.) According to Sykes, Byrd
signed Sykes' name on the Guaranties without Sykes' permission,
without noting that he was signing as Sykes' representative, and
beyond Byrd's authority under the powers of attorney. (See
Def.'s Resp. 3-10; Def.'s Resp. to Pl.'s Statement of Facts ¶
14.)

Arvest concedes that Byrd signed Sykes' name on the
Guaranties. (See Pl.'s Statement of Facts ¶ 14.) Nevertheless,
Arvest contends that the powers of attorney gave Byrd the
authority to sign Sykes' name, creating a binding personal
obligation on Sykes. (See id.; Pl. Arvest Bank's Mem. in Supp.
of Mot. for Summ. J. 6-9, ECF No. 31-1 ("Pl.'s Mem."); Pl.'s
Reply 4-6.)

The Lessee, Horizon Holding, Sykes, and Hutton were
represented in the Project transaction by the Memphis law firm
of Harris, Shelton, Hanover, Walsh PLLC ("Harris, Shelton").
(See Pl.'s Statement of Facts ¶ 15; Am. Compl. ¶ 12; Answer ¶

12.)   After two of the three powers of attorney were executed and after Byrd signed the Guaranties in Sykes' name, Harris, Shelton issued an opinion letter stating that the Guaranties were personally enforceable against Sykes and Hutton.  (See Ex. F, at 3, 5, ECF No. 19-6.)

In 2008, the Lessee and Horizon Holding defaulted on the Project transaction agreements.  (See Pl.'s Statement of Facts ¶ 18; Def.'s Resp. to Pl.'s Statement of Facts ¶ 18.)  Arvest owns all of the Bonds and, as the significant bondholder, is an intended third-party beneficiary under the Guaranties.  (See Pl.'s Statement of Facts ¶ 19; Def.'s Resp. to Pl.'s Statement of Facts ¶ 19.)  Arvest has foreclosed on the Lamar Crossing real property.  (See Pl.'s Statement of Facts ¶ 20; Def.'s Resp. to Pl.'s Statement of Facts ¶ 20.)

As of September 16, 2009, Arvest was owed $3,291,206.13 as a deficiency on the loan for the Project, with daily interest of $554.55 accruing since that date.  (See Pl.'s Statement of Facts ¶ 23; Def.'s Resp. to Pl.'s Statement of Facts ¶ 23.)  Arvest has also incurred and paid $709,290.74 in out-of-pocket expenses to safeguard and maintain the Lamar Crossing real property since the Lessee and Horizon Holding defaulted.  (See Pl.'s Statement of Facts ¶ 24; Def.'s Resp. to Pl.'s Statement of Facts ¶ 24.)

**II.  Jurisdiction and Choice of Law**

Under 28 U.S.C. § 1332(a), this Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" between citizens of different states. 28 U.S.C. § 1332(a)(1). Arvest is an Arkansas corporation with its principal place of business in Arkansas. (Am. Compl. ¶ 2.) Sykes is an Oklahoma citizen and Hutton is a Texas citizen. (Id. ¶¶ 3-4; Answer ¶¶ 3-4.) Horizon Holding was a limited liability company. (See Am. Compl. ¶¶ 5-6; Answer ¶ 5.) As such, it had the citizenship of each of its members. Delay v. Rosenthal Collins Grp., LLC, 585 F.3d 1003, 1005 (6th Cir. 2009) (citations omitted). None of its members was an Arkansas citizen. Complete diversity exists. See V&M Star, LP v. Centimark Corp., 596 F.3d 354, 355 (6th Cir. 2010) (citation omitted).

Arvest seeks damages under the Guaranties of not less than $6 million against Sykes, Hutton, and Horizon Holding, and damages against Sykes of not less than $6 million for fraud and intentional misrepresentation. (See Am. Compl. 14.) More than $75,000 is in controversy, satisfying the amount-in-controversy requirement. See 28 U.S.C. § 1332(a). Therefore, this Court has diversity jurisdiction. See id.

In a diversity action, state substantive law governs. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). A federal

10

district court is required to apply the "choice of law" rules of the state in which it sits.  See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941).  The Guaranties on which Arvest seeks summary judgment against Sykes contain provisions stating that the Guaranties "shall be governed by, and construed in accordance with, the laws of the State of Tennessee, without giving effect to conflict of laws principles."  (Ex. A, at 11, ECF No. 31-9; Ex. B, at 11, ECF No. 31-10.)  The choice of law provisions were executed in good faith, Tennessee bears a material connection to the transaction, the basis for choosing Tennessee law was reasonable, and no state has a materially greater interest in the dispute.  Therefore, the choice of law provisions in the Guaranties are enforceable.  See Credit Gen. Ins. Co. v. Ins. Serv. Grp., Inc., No. E2007-00033-COA-R3-CV, 2007 WL 2198475, at *2 (Tenn. Ct. App. July 31, 2007); Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citation omitted).

All of the powers of attorney executed by Sykes purport to give Byrd the powers under Tennessee's Uniform Durable Power of Attorney Act, Tenn. Code Ann. §§ 34-6-101 et seq.  (See Limited Power of Att'y 1-3, ECF No. 31-5.)  Two of the three powers of attorney were executed in Tennessee, but one was executed in Oklahoma.  (See id.)  Because the one executed in Oklahoma refers to Tennessee law, it evidences Sykes' intent to have

Tennessee law govern that power of attorney. Therefore, Tennessee law governs the powers of attorney executed by Sykes. See Vantage Tech., 17 S.W.3d at 650.

The parties agree that Tennessee law applies. (See, e.g., Def.'s Resp. 7, 10-14; Pl.'s Reply 3-6.) Tennessee law governs the powers of attorney and the Guaranties. Therefore, Tennessee substantive law governs this action. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998); In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1495 (D.C. Cir. 1991).

**III. Standard of Review**

Under Federal Rule of Civil Procedure 56, the party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986) (citations omitted). "When the moving party does not have the burden of proof, he need only show that the opponent cannot sustain his burden at trial." Whirlpool Props., Inc. v. LG Elecs. U.S.A., Inc., No. 1:03-CV-414, 2005 WL 3088339, at *2 (W.D. Mich. Nov. 17, 2005). "But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his

showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Id. (quoting Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986)). When the moving party bears the burden of persuasion at trial, the moving party's summary judgment burden is higher, "in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." Id. (quoting Arnett v. Myers, 281 F.3d 552, 561 (6th Cir. 2002)); see Cockrel v. Shelby Cnty. Sch. Dist., 270 F.3d 1036, 1056 (6th Cir. 2001); Calderone, 799 F.2d at 259 (citation omitted). Accordingly, "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999).

## IV. Analysis

Arvest argues that Sykes is liable under the Guaranties because Sykes gave Byrd the power to sign documents in Sykes' name and bind Sykes to the promises attributed to him. (See Pl.'s Mem. 6-9.) Sykes argues that the powers of attorney did not authorize Byrd to obligate him individually and, therefore, that he is not contractually bound to honor the Guaranties. (See Def.'s Resp. 8-11, 15-16.)

"The execution of a power of attorney creates a principal-agent relationship." Tenn. Farmers Life Reassurance Co. v. Rose, 239 S.W.3d 743, 749 (Tenn. 2007) (citation omitted); accord Mitchell v. Kindred Healthcare Operating, Inc., No. W2008-00378-COA-R3-CV, 2008 WL 4936505, at *2 (Tenn. Ct. App. Nov. 19, 2008). "Unless otherwise constrained by law or public policy, a person executing a power of attorney may empower his or her agent to do the same acts, to make the same contracts, and to achieve the same legal consequences as the principal would be personally empowered to do." Rose, 239 S.W.3d at 749. The power of attorney's language determines the extent of the authority conveyed to the agent. Id. (citing Armstrong v. Roberts, 211 S.W.3d 867, 869 (Tex. App. 2006)). "The more specific a power of attorney is concerning the performance of particular acts, the more the agent is restricted from performing acts beyond the specific authority granted." Id. (citation omitted).

"A power of attorney is a written instrument that evidences to third parties the purpose of the agency and the extent of the agent's powers." Id. (citations omitted); see Mitchell, 2008 WL 4936505, at *2. Courts construe a power of attorney using the ordinary rules of construction in interpreting contracts and other written instruments. See Rose, 239 S.W.3d at 749 (citations omitted); Mitchell, 2008 WL 4936505, at *2 (citation

14

omitted); <u>Cabany v. Mayfield Rehab. & Special Care Ctr.</u>, No. M2006-00594-COA-R3-CV, 2007 WL 3445550, at *4 (Tenn. Ct. App. Nov. 15, 2007).  When interpreting a power of attorney, "[t]here should be neither a 'strict' nor a 'liberal' interpretation of the instrument, but rather a fair construction that carries out the author's intent as expressed in the instrument." <u>Rose</u>, 239 S.W.3d at 750 (citations omitted).  If a power of attorney's meaning is clear, courts enforce its plain terms.  <u>See</u> <u>id.</u> (citations omitted).

"A written power of attorney that states it is not affected by the subsequent disability or incapacity of the principal is a 'durable power of attorney.'" <u>Rose</u>, 239 S.W.3d at 748 (citation omitted).  Durable powers of attorney are construed in light of the Uniform Durable Power of Attorney Act, Tenn. Code Ann. §§ 34-6-101 <u>et seq.</u>  <u>See</u> <u>id.</u>  Tennessee Code Annotated § 34-6-108(a) provides that:

> Upon the principal clearly expressing an intention to do so within the instrument creating a power of attorney, the language contained in § 34-6-109 may be incorporated into the power of attorney by appropriate reference.  The provisions so incorporated shall apply to the attorney in fact with the same effect and subject to the same judicial interpretation and control in appropriate cases, as though the language were set forth verbatim in such instrument.

Tenn. Code Ann. § 34-6-108(a).  "Section 34-6-109 then proceeds to list twenty-two various powers which, pursuant to section 34-6-108, may be incorporated by reference into a durable power of

15

attorney." <u>Rose</u>, 239 S.W.3d at 748.  Those powers include the power to sign in the principal's name "as fully and effectually as the principal could do if personally present and acting" and secure borrowed money for the principal in a manner the attorney-in-fact deems appropriate.  Tenn. Code Ann. § 34-6-109(1), (11).  The Tennessee Supreme Court has found that a power of attorney providing that it "shall not be affected by [Clara's] subsequent disability or incapacity and is made pursuant to the Uniform Power of Attorney Act as codified in <u>Tennessee Code Annotated, Section,</u> 34-6-101, <u>et. seq.</u>" is sufficient to incorporate the statutory powers listed in § 34-6-109.  <u>Stewart v. Sewell</u>, 215 S.W.3d 815, 818, 827 n.13 (Tenn. 2007) (alterations in original).

Here, the powers of attorney executed by Sykes are not ambiguous.  Although the powers of attorney do not mention the particular section of the Tennessee Code Annotated in which the § 34-6-109 powers appear, the Tennessee Supreme Court has found that a power of attorney incorporated those powers by stating it was "made pursuant to the Uniform Power of Attorney Act as codified in Tennessee Code Annotated, Section, 34-6-101, <u>et. seq.</u>" without expressly referencing § 34-6-109.  <u>Stewart</u>, 215 S.W.3d at 818, 827 n.13.  The powers of attorney in this case contain essentially identical language:

> Pursuant to the Durable Power of Attorney Act of the State of Tennessee, T.C.A. Sections 34-6-101 et seq., the rights, powers and authority of said attorney-in-fact granted in this instrument shall commence and be in full force and effect from the time of the signing of this instrument, and shall not be affected or revoked by my subsequent disability or incapacity.

(Limited Power of Att'y 1-3, ECF No. 31-5.)  The phrase "et seq." in the powers of attorney is a common abbreviation that means "And those (pages or sections) that follow."  Black's Law Dictionary 633 (9th ed. 2009).  Because § 34-6-109 follows § 34-6-101 and the Tennessee Supreme Court has found essentially identical language sufficient to incorporate the powers listed in § 34-6-109, the plain terms of the powers of attorney gave Byrd the powers listed in § 34-6-109.  See Stewart, 215 S.W.3d at 818, 827 n.13; Black's Law Dictionary 633 (9th ed. 2009).  Those powers gave him actual authority to sign the Guaranties in Sykes' name and create a binding personal obligation for Sykes.  See Tenn. Code Ann. § 34-6-109(1) (giving an attorney-in-fact the power to sign documents in the principal's name "as fully and effectually as the principal could do if personally present and acting"), (11) (giving an attorney-in-fact the power to secure borrowed money for the principal in a manner the attorney-in-fact deems appropriate); Rose, 239 S.W.3d at 749 ("Unless otherwise constrained by law or public policy, a person executing a power of attorney may empower his or her agent to do the same acts, to make the same contracts, and to achieve the

17

same legal consequences as the principal would be personally empowered to do.") (citations omitted).  Sykes' argument to the contrary is not well-taken.  (See Def.'s Resp. 12-13; Def.'s Reply 7-10.)

Even if the powers of attorney did not give Byrd the powers listed in § 34-6-109, the powers conferred on Byrd elsewhere in the powers of attorney gave Byrd actual authority to sign the Guaranties in Sykes' name and create a binding personal obligation for Sykes.  The powers of attorney gave Byrd the power to sign on Sykes' "behalf any and all documents necessary to conduct the development and transactional business for" Horizon Holding, including the power to sign contracts and any other documents required by the lender or closing attorney. (Limited Power of Att'y 1-3, ECF No. 31-5.)  Sykes admits that Arvest required personal guaranties from him and Hutton before investing in the Project.  (See Pl.'s Statement of Facts § 13; Def.'s Resp. to Pl.'s Statement of Facts § 13.)  Therefore, the Guaranties were documents necessary to conduct Horizon Holding's development and transactional business, and the plain and unambiguous terms of the powers of attorney gave Byrd actual authority to sign the Guaranties in Sykes' name and to bind Sykes.  See Rose, 239 S.W.3d at 750-51 (concluding that, where a power of attorney did not incorporate the § 34-6-109 powers, but authorized the attorney-in-fact "to transact all insurance

business on [the principal's] behalf, to apply for or continue policies, collect profits, file claims, make demands, enter into compromise and settlement agreements, file suits or actions <u>or take any other action necessary or proper in this regard</u>," the attorney-in-fact had authority to change the beneficiary of the principal's life insurance policy although the attorney-in-fact would not have had that power had the § 34-6-109 powers been incorporated).

The result would be the same even if Byrd had lacked actual authority to sign the Guaranties in Sykes' name. "Although an unauthorized contract is generally voidable by the principal, a principal who ratifies that contract is bound by its terms as if he or she had executed it originally." <u>Webber v. State Farm Mut. Auto. Ins. Co.</u>, 49 S.W.3d 265, 270 (Tenn. 2001) (citation omitted). Ratification of a contract occurs when one approves, adopts, or confirms a contract previously executed "by another[,] in his stead and for his benefit, but without his authority." <u>Id.</u> (quoting <u>James v. Klar & Winterman</u>, 118 S.W.2d 625, 627 (Tex. Civ. App. 1938)). It "may be established 'from the conduct of the purported principal manifesting that he consents to be a party to the transaction or from conduct justifiable only if there is a ratification.'" <u>Id.</u> (quoting <u>Osborne Co. v. Baker</u>, 245 S.W.2d 419, 421 (Tenn. Ct. App. 1951)). As the Tennessee Supreme Court has stated:

19

> Where there is a full knowledge of the facts possessed by the principal, and he pursues thereafter a line of conduct which is consistent alone with the theory that the agent was acting for him, then the doctrine of ratification applies, <u>and it is immaterial whether a ratification was contemplated or not.</u>

<u>Id.</u> (quoting <u>Memphis St. Ry. Co. v. Roe</u>, 102 S.W. 343, 348 (1907)).

Sykes was represented in the Project transaction by the law firm of Harris, Shelton. (<u>See</u> Pl.'s Statement of Facts ¶ 15; Am. Compl. ¶ 12; Answer ¶ 12.) After the powers of attorney had been executed and after Byrd had signed the Guaranties in Sykes' name, Harris, Shelton issued an opinion letter representing that the Guaranties were enforceable against Sykes. (<u>See</u> Ex. F, at 3, 5, ECF No. 19-6.) That representation is attributable to Sykes. <u>See</u> <u>World Relief Corp. of Nat'l Ass'n of Evangelicals v. Messay</u>, No. M2005-01533-COA-R3-CV, 2007 WL 2198199, at *5 (Tenn. Ct. App. July 26, 2007) (citations omitted).

Sykes admits that Arvest required personal guaranties from Sykes and Hutton before investing in the Project. (<u>See</u> Pl.'s Statement of Facts ¶ 13; Def.'s Resp. to Pl.'s Statement of Facts ¶ 13.) Sykes benefitted from Byrd's signing the Guaranties in his name because, without the Guaranties, the Project would not have gone forward.

Because Sykes represented that the Guaranties were enforceable against him personally and benefitted from Byrd's

signing the Guaranties in Sykes' name, Sykes approved, adopted, and confirmed the Guaranties.  See Webber, 49 S.W.3d at 270.  He had full knowledge that Byrd had signed the Guaranties and pursued "a line of conduct which is consistent alone with the theory that [Byrd] was acting for him" by representing to Arvest that the Guaranties were enforceable.  Id.  By doing so, Sykes ratified the Guaranties and made them enforceable against him even if Byrd lacked actual authority to sign Sykes' name to them.  See id.  Therefore, the Guaranties are enforceable against Sykes on a ratification theory.  See id.

That Sykes now denies that Harris, Shelton represented him in the Project transaction is not dispositive.  (See Def.'s Resp. to Pl.'s Statement of Facts ¶ 15.)  He admitted that fact in his answer to the Amended Complaint.  (See Am. Compl. ¶ 12; Answer ¶ 12.)  As such, he cannot avoid summary judgment by offering an affidavit contradicting his prior admission.  See Hughes v. Vanderbilt Univ., 215 F.3d 543, 549 (6th Cir. 2000) ("Plaintiffs are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit.") (citations omitted); Bluegrass Hosiery, Inc. v. Speizman Indus., Inc., 214 F.3d 770, 772 n.1 (6th Cir. 2000) ("Rule 7(a) [of the Federal Rules of Civil Procedure] defines the following as pleadings: an answer, a reply to a counter-claim, an answer to a cross-claim, a third party

complaint, and a third party answer."); Dice v. Weiser Sec.
Servs., Inc., No. 06-61133-CIV, 2008 WL 269513, at *3 (S.D. Fla.
Jan. 29, 2008) (stating that the defendant could not avoid a
factual admission in its answer by filing a motion for summary
judgment asserting an inconsistent position).

The Guaranties became payable when the Lessee and Horizon
Holding defaulted on the Project agreements. (See Pl.'s
Statement of Facts ¶ 18; Def.'s Resp. to Pl.'s Statement of
Facts ¶ 18; Ex. A, at 2-5, 9-12, ECF No. 31-9; Ex. B, at 2-5,
10-12, ECF No. 31-10.) Arvest owns all of the Bonds and, as the
significant bondholder, has standing to enforce the promises
attributable to Sykes in the Guaranties. (See Ex. A, at 10, ECF
No. 31-9; Ex. B, at 10, ECF No. 31-10.) As of September 16,
2009, Arvest was owed $3,291,206.13 as a deficiency on the loan
for the Project, with daily interest of $554.55 accruing since
that date. (See Pl.'s Statement of Facts ¶ 23; Def.'s Resp. to
Pl.'s Statement of Facts ¶ 23.) Arvest has also incurred and
paid $709,290.74 in out-of-pocket expenses to safeguard and
maintain the Lamar Crossing real property since the Lessee and
Horizon Holding defaulted. (See Pl.'s Statement of Facts ¶ 24;
Def.'s Resp. to Pl.'s Statement of Facts ¶ 24.) Sykes owes
those amounts to Arvest under the Guaranties. (See Ex. A, at 2-
5, 9-12, ECF No. 31-9; Ex. B, at 2-5, 10-12, ECF No. 31-10.)
Because "the record contains evidence satisfying the burden of

persuasion and . . . the evidence is so powerful that no reasonable jury would be free to disbelieve it," Arvest is entitled to summary judgment against Sykes. <u>Whirlpool Props., Inc.</u>, 2005 WL 3088339, at *2 (quoting <u>Arnett</u>, 281 F.3d at 561). No reasonable trier of fact could find other than for Arvest. Therefore, Arvest is entitled to damages of $4,000,496.87, plus daily interest of $554.55 on the underlying debt from September 16, 2009, until the date of final judgment.

### V.   Conclusion

For the foregoing reasons, the Court GRANTS Arvest's Motion and ORDERS that judgment be entered against Sykes in the amount of $4,000,496.87, plus daily interest of $554.55 on the underlying debt from September 16, 2009, until the date of final judgment.

So ordered this 14th day of March, 2011.


s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE